UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED

99 JUL 16 AM 9:25

U. S. DISTRICT COURT
N.D. OF ALABAMA

JAMES CALVIN GAMBLE,              )
                                  )
        Plaintiff,                )
                                  )
vs.                               )    Civil Action No. CV97-S-1547-NE
                                  )
P & M MECHANICAL,                 )
                                  )                ENTERED
        Defendant.                )
                                       JUL 1 6 1998

MEMORANDUM OPINION

This is an action under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq.*, and the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA"). Plaintiff, James Calvin Gamble, who represents himself, *pro se*, claims he was subjected to a drug test, required to perform plumbing and welding duties, and terminated from his position as a pipe fitter with defendant P&M Mechanical because of his race (African-American). Alternatively, Gamble claims he suffered from a disabling back condition, and that he was terminated from employment because of that disability. The action is before this court on two motions by defendant: a motion for summary judgment, and a motion to strike plaintiff's brief in opposition to summary judgment. Upon consideration of the pleadings, briefs, and evidentiary submissions, this court concludes the motion for summary judgment is due to be granted and the motion to strike is moot.

22

## I. MOTION TO STRIKE

Defendant's motion to strike plaintiff's brief in opposition to summary judgment was based on plaintiff's initial failure to sign that document as required by Rule 11 of the Federal Rules of Civil Procedure. Plaintiff has subsequently signed the brief, and this court finds that defendant's motion to strike is moot.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ..." Rule 56(c), *Fed.R.Civ.P.* (emphasis added). The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir. 1991). The moving party discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case. *Jeffery v. Sarasota White Sox, Inc.,* 64 F.3d 590, 593 (11th Cir. 1995) *(per curiam).* Rule 56 permits the movant to discharge this burden with or without supporting affidavits. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2553. When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate

2

specific facts showing there is a genuine issue for trial. *Jeffery*, 64 F.3d at 593.

In deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91

3

L.Ed.2d 202 (1986)).   The bottom line is "whether the evidence
presents a sufficient disagreement to require submission to a jury
or whether it is so one-sided that one party must prevail as a
matter of law." *Anderson,* 477 U.S. at 251-52, 106 S.Ct. 2512.

With the foregoing standards in mind, this court now will
summarize the undisputed facts, or, if disputed shall state them in
a manner most favorable to the non-moving party, plaintiff James
Calvin Gamble.

### III.  FACTS

P&M Mechanical is in the business of cutting and fitting pipe,
and installing heating, ventilation, and air conditioning systems
in commercial construction projects.  (Pesnell affidavit at 2.)
P&M commenced work on a project at Calhoun Community College in
North Alabama during April of 1995, and scheduled a completion date
for the project of January, 1996.   Five months into that work, P&M
hired six pipe fitters to assist in timely completion of the
project.  (*Id.*; Gordon affidavit at 1.)  The following is a list of
those pipe fitters and their dates of hire:

| NAME | DATE OF HIRE |
|---|---|
| Corey Allen Brown | September 9, 1995 |
| Plaintiff: James C. Gamble | September 18, 1995 |
| Michael Bagsby | October 10, 1995 |
| John Albert Wood | October 17, 1995 |
| Michael Young | October 17, 1995 |
| Michael Anthony Marabella | October 19, 1995 |

(Gordon affidavit at 1.)  James Calvin Gamble says he was the only
African-American pipe fitter; P&M does not challenge that
allegation.  Plaintiff claims he was the only pipe fitter who was

4

required to take a drug test, but he presents no admissible evidence in support of that allegation.[1] P&M avers that each of the six pipe fitters was required to submit to a drug test after they were hired. (Pesnell affidavit at 2.)

P&M claims each of the pipe fitters was laid-off or resigned employment as the Calhoun Community College project neared completion. (Id.) John Albert Wood allegedly resigned in October of 1995, while Michael Bagsby, Corey Allen Brown, and Michael Young were laid-off in November of 1995. (Id.) Plaintiff, James Calvin Gamble, and Michael Anthony Marabella worked through December 8, 1995, after which date P&M ceased using pipe fitters on the project. (Gordon affidavit at 1, exhibits 8, 12.) Gamble claims P&M continued to employ white pipe fitters, even after December 8, 1998.

James C. Gamble allegedly suffered an on-the-job injury to his back on November 30, 1995. (Amended complaint at 1.) He visited an emergency room for treatment of that injury on December 7, 1995, and the treating physician advised that he should refrain from work for five days. (Id.; plaintiff's deposition exhibit 1.) The same day, Gamble informed the project foreman, Frank Mangum, that he required a light duty position for a period ranging from one week

---

[1]During his deposition, plaintiff described certain employees who allegedly told him they had not been required to take a drug test. (Plaintiff's deposition at 48, 51-52.) Even so, plaintiff could not identify those employees by name, and they could not be called to testify at trial. Thus, this court may not consider that hearsay testimony when deciding the motion for summary judgment. Pritchard v. Southern Company Services, 92 F.3d 1130, 1135, modified, 102 F.3d 1118 (11th Cir. 1996)(statements by unknown coworkers inadmissible at summary judgment stage).

5

to ten days.  (Mangum affidavit at 1.)  Mangum said no light duty

positions were available; therefore, Gamble requested three days

off from work.  (Amended complaint at 1; Mangum affidavit at 1.)

Mangum provides the following affidavit testimony regarding his

response to Gamble's request:

> 6.  At the time Mr. Gamble requested light duty the
> Calhoun Project was winding down.  I told Mr. Gamble that
> when he was able to return to work that he should contact
> me or if the Calhoun Project was finished, contact
> someone at the office in Birmingham with respect to
> working at another P&M job site.
>
> 7.  I told Mr. Gamble that his job at the Calhoun
> Project may not be available, but that if he desired to
> return to work he should contact P&M's office in
> Birmingham regarding working on other P&M jobs.
>
> 8.  Mr. Gamble has never contacted me or P&M's
> office in Birmingham regarding returning to work for P&M.
>
> 9.  At no time did I tell Mr. Gamble that he was
> laid off from P&M.  I told him that his job for P&M at
> the Calhoun Project might not be available when he
> returned because the work was being completed.

(Mangum affidavit at 2.)

James Gamble drove to the Calhoun Community College job site

on December 8, 1995, to retrieve his paycheck for the previous work

period.  (Pesnell affidavit at 3.)  Gary Pesnell, P&M's project

superintendent, provides the following affidavit testimony

concerning the conversation that then ensued:

> 13.  On December 8, 1995, Mr. Gamble came to see me
> to pick up his paycheck.  I gave Mr. Gamble his regular
> paycheck, plus his final check because I knew that we
> were completing the job, and that the job was completed
> in terms of pipe fitting.  At that time I told him that
> when he was released from his doctor to return to work he
> should communicate that to me or to Frank Mangum, the P&M
> foreman at the site.

6

14.  I have not heard anything from James Gamble
regarding his return to work.  Eventually, P&M considered
Mr. Gamble as having been laid off because we no longer
had any need for pipe fitters on that job.

15.  The job ended January 19, 1996.

16.  At no time did I tell Mr. Gamble that he was
laid off from his position.

17.  I told Mr. Gamble that if he wanted to work for
P&M in Birmingham he should contact the home office.  He
never communicated to me or anyone else his desire to
continue working for P&M after the Calhoun Project was
completed.

(Pesnell affidavit at 3.)  James Gamble testified during deposition

that he would not have accepted a position in Birmingham, Alabama.

(Plaintiff's deposition at 37-38.)

James C. Gamble was diagnosed with "back strain" by an

emergency room physician on December 7, 1995.    (Plaintiff's

deposition at 281.)   For approximately six weeks following his

injury, Gamble only engaged in limited movement.    (*Id.* at 136.)

After that period, he began to perform manual tasks; he returned to

work for a plumbing company in April of 1996.   (*Id.* at 33-34, 272.)

James Gamble considered himself "fully healed" by November of 1997.

(*Id.* at 191.)  No physician has ever advised him of any permanent

impairment arising from his injury.   (*Id.* at 270.)

## IV.  MOTION FOR SUMMARY JUDGMENT

### A.  Race Discrimination

#### 1.  Title VII analysis

James C. Gamble bears the burden of proving by a preponderance

of the evidence that P&M intentionally discriminated against him

7

because of his race.    That can be done either by direct or
circumstantial evidence. Plaintiff offers no direct evidence of a
discriminatory animus, however.    When, therefore, as here, the
evidence of intent is circumstantial in nature, the Supreme Court
has prescribed an analytical process to evaluate the strength of
plaintiff's proof.   In three decisions rendered over two decades,
the Supreme Court "developed a formula for shifting evidentiary
burdens  between  plaintiff  and  defendant  which  permits  the
establishment of intentional discrimination without direct evidence
of unlawful motivation." A.C. Modjeska, *Employment Discrimination
Law* § 1:09, at 39-40 (3d ed. 1996).   The order and allocation of
burdens of proof, persuasion, and production were first defined in
*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36
L.Ed.2d 668 (1973), then elaborated in *Texas Department of
Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67
L.Ed.2d 207 (1981), and finally elucidated in *St. Mary's Honor
Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407
(1993).   The analytical structure developed by that trilogy has
three steps, the ultimate goal of which is that of "progressively
... sharpen[ing] the inquiry into the elusive factual question of
intentional discrimination." *St. Mary's Honor Center*, 509 U.S. at
506, 113 S.Ct. at 2746 (quoting *Burdine*, 450 U.S. at 255 n.8, 101
S.Ct. at 1094 n.8).

     The first step is satisfied when the plaintiff establishes a
*prima facie* case.

8

> A *prima facie* case of racially discriminatory
> discharge is generally established by a plaintiff proving
> "(1) that he is a member of a protected minority, (2)
> that he was qualified for the job from which he was
> discharged, (3) that he was discharged, and (4) that his
> former position was filled by a non-minority." The
> fourth element may also be satisfied by demonstrating
> that the plaintiff was terminated "while others not in
> the plaintiff's protected class, 'having comparable or
> lesser qualifications,' were retained," or that the
> plaintiff suffered from "differential application of work
> or disciplinary rules."

*Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1525 (11th Cir. 1991)(footnotes and citations omitted).

At the second stage of analysis, the burden of production shifts to defendant to rebut the presumption of intentional discrimination raised by plaintiff's demonstration of a *prima facie* case. A defendant may do so by articulating legitimate, nondiscriminatory reasons for the contested employment action. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

If defendant presents such evidence, then in the final step of the inquiry plaintiff must show by a preponderance of the evidence that defendant's stated reasons are mere pretexts for unlawful, discriminatory motives. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

### 2. Discriminatory drug testing claim

James C. Gamble alleges that he was required to take a drug test after being hired, but white pipe fitters were not. P&M claims Gamble cannot establish a *prima facie* case of discrimination with regard to that claim for two reasons: (1) there is no

9

evidence that P&M treated other employees more favorably; and (2)
the drug test did not constitute an adverse job action.

### a.   Differential treatment

The evidence submitted by P&M establishes that all pipe
fitters (regardless of race) were required to submit to a drug
test. James Gamble provides two responses to defendant's evidence:

> 5. CONTRARY TO THE DEFENDANTS [sic] STATEMENT THAT THE
> OTHER PIPEFITTERS TOOK A DRUG TEST, VERBAL COMMUNICATIONS
> WITH THE OTHER PIPEFITTERS AND THE PLAINTIFF PROVE OTHER
> WISE [sic].  NONE OF THE DEFENDANTS [sic] FILES SHOWED
> BUT ONE DRUG TEST AND THAT WAS FOR THE PLAINTIFF.
>
> . . .
>
> C.  BY VERBAL COMMUNICATIONS WITH THE OTHER PIPEFITTERS
> THAT SAID THEY DID NOT TAKE A DRUG TEST ON THAT JOB
> (SUMMONS THEM)

(Plaintiff's brief at 2, 4.)  Gamble has presented this court with
no admissible evidence in support of his allegation that other pipe
fitters informed him that they were not required to submit to drug
tests. Apparently, he would like this court to issue a "summons"
to obtain their testimony. It is the plaintiff's duty to issue
such "summons," in the form of deposition subpoenas, during
discovery.  His apparent failure to fulfill that duty leaves
defendant's evidence unrebuttted, and summary judgment is
warranted.

### b.   Adverse job action

The Eleventh Circuit has never defined the parameters of those
job actions which may be considered sufficiently "adverse" to

10

warrant a remedy under Title VII.[2]  Even so, at least one court has
held that "[c]hanges in duties or working conditions that cause no
materially significant disadvantage ... are insufficient to
establish the adverse conduct required to make a *prima facie* case."
*Harlston v. McDonell Douglas Corp.*, 37 F.3d 379, 381 (9th Cir.
1994).

James Calvin Gamble admitted in deposition that no adverse
action was taken against him because of his drug test.
(Plaintiff's deposition at 212.)  Moreover, he testified that drug
testing is "common" in the construction industry, and that he has
been required to take a drug test by every construction company for
which he has worked.  (*Id.* at 48.)  Gamble has presented no
evidence that the drug test caused a "materially significant
disadvantage" sufficient to be considered an "adverse employment
action."  Accordingly, summary judgment is appropriate.

**3.  Discriminatory termination**

**a.  *Prima facie* case**

P&M argues that James Gamble cannot establish a *prima facie*
case of discriminatory discharge, because there is no evidence he
was "replaced by anyone else and no white pipe fitters were treated
any better than plaintiff ...."  (Defendant's brief at 7.)

James Gamble testified that P&M employed five pipe fitters at

---

[2]This court notes that the Eleventh Circuit recently held "that Title VII's
protection against retaliatory discrimination extends to adverse actions which
fall short of ultimate employment decisions."  *Wideman v. Wal-Mart Stores, Inc.*,
141 F.3d 1453, 1456 (11th Cir. 1998).  The court declined to specify those
actions which would be sufficiently discriminatory, however.  *Id.*

11

the Calhoun Community College project, in addition to himself, on November 30, 1995: the day of his back injury. (Plaintiff's deposition at 187.) Gamble also makes the following statement in his *pro se* brief:

> 6. & 7. CONTRARY TO THE DEFENDANTS STATEMENT THAT P & M NO LONGER NEEDED PIPEFITTERS AFTER DEC 8, 1995. AND ALL OF THE WHITE PIPEFITTERS WERE STILL WORKING. WHEN THE PLAINTIFF RETURNED TO THE SITE ON DEC 8, THEY WERE THERE AND WORKING ON THE BOILER AND THE COOLER TOWER.

(Plaintiff's brief at 2.) Even viewing the evidence in a light most favorable to plaintiff, this court cannot conclude James Gamble has established a *prima facie* case.

"If Plaintiff fails to identify similarly situated, nonminority employees who were treated more favorably, [his] case must fail because the burden is on [him] to establish [his] prima facie case." *Jones v. Bessemer Carraway Medical Center*, 137 F.3d 1306, 1311 (11th Cir. 1998)(emphasis supplied). James C. Gamble has identified no pipe fitters who were treated more favorably. He claims that other pipe fitters were working on December 8, 1998, but his deposition testimony demonstrates a marked inability to identify any of those pipe fitters by name. (*See, e.g.,* plaintiff's deposition at 182.) Without such identification, this court is presented only with P&M's evidence that six pipe fitters were hired for the Calhoun Community Project, and Gamble worked as long, or longer, than any other pipe fitter on the project.

The Eleventh Circuit "has consistently held that conclusory allegations without specific supporting facts have no probative

12

value." *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). James C. Gamble has presented this court with no specific facts· supporting his conclusory allegations that pipe fitters continued to work on the Calhoun Community College project after December 8, 1995. This court thus finds that he has not presented a *prima facie* case, and summary judgment is appropriate.

> b. **P&M's asserted reason for its action, and Gamble's rebuttal**

P&M alternatively argues that Gamble cannot rebut its alleged nondiscriminatory reason for his termination: "the job was being completed and there was no need for any other pipe fitters." (Defendant's brief at 7.) P&M's evidence establishes that "[a]fter December 8, 1995, no pipe fitters worked on the Calhoun Project." (Gordon affidavit at 2.) Indeed, payroll records confirm that James C. Gamble was one of the last two pipe fitters to work on the project. (Gordon affidavit exhibits 7-12.)

James Gamble may rebut P&M's reason for his termination by coming forward "with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). Gamble has produced no such evidence. Even if this court accepted the statement in Gamble's *pro se* brief that he observed pipe fitters working on December 8, 1995, there is no

13

evidence before this court that any pipe fitter worked after that date. This court thus finds that James C. Gamble has presented insufficient evidence to rebut P&M's reason for his termination, and summary judgment is appropriate.

### 4. Discriminatory treatment

This court notes that James Gamble attempts to set forth two additional claims for disparate treatment on the basis of his race. Mr. Gamble's *pro se* complaint alleges he "was the only pipe fitter to do welding and plumbing," and that white pipe fitters were not required to perform such duties. (Doc. no. 2 at 1-2.) P&M's motion for summary judgment does not address that claim. Even so, this court has reviewed the record, and found no evidence indicating that performance of welding and plumbing duties is an "adverse job action" capable of redress under Title VII. Accordingly, Gamble cannot establish a *prima facie* case of discrimination, and P&M is entitled to summary judgment on that claim.

In responding to the motion for summary judgment, Mr. Gamble also alleges that he "WAS NOT PAID THE SAME AS THE OTHER PIPEFITTERS HE WAS PAID LESS $12.00 NOT $13.00 AS STATED, BY DEFENDANTS ALL PIPEFITTERS ARE PAID THE SAME.  (NOT TRUE)" (Plaintiff's brief at 4.)  Gamble makes no claim for wage discrimination in his complaint, and he will not be permitted to raise that claim now.

14

## C.   Disability Discrimination

### 1.   ADA analysis

Although the Eleventh Circuit has not explicitly held to the following effect, it nevertheless is widely agreed that the burden-shifting analysis expressed in *McDonnell Douglas* and its progeny, and applied in Title VII disparate treatment cases, is similarly followed in deciding cases brought under the ADA. *See McNemar v. The Disney Store, Inc.,* 91 F.3d 610, 619 (3d Cir. 1996), *cert. denied,* __ U.S. __, 117 S.Ct. 958 (1997); *Rizzo v. Children's World Learning Centers, Inc.,* 84 F.3d 758, 761 n.2 (5th Cir. 1996), *cert. denied,* __ U.S. __, 117 S.Ct. 958 (1997); *see also Moses v. American Nonwovens, Inc.,* 97 F.3d 446, 447 (11th Cir. 1996), *cert. denied,* __ U.S. __, 117 S.Ct. 964 (1997)(implicitly using burden-shifting framework); *Johnson v. Boardman Petroleum, Inc.,* 923 F. Supp. 1563 (S.D. Ga. 1996); *Lewis v. Zilog, Inc.,* 908 F. Supp. 931 (N.D. Ga. 1995).

To establish a *prima facie* case of discrimination under the ADA, a plaintiff must demonstrate:  (1) that he has a disability; (2) that he is a "qualified individual" (*i.e.,* that he can perform the essential functions of the job position he holds or seeks, with or without reasonable accommodation being made by the employer[3]);

---

[3]42 U.S.C. § 12111(8) (defining "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires"). *See also* 29 C.F.R. § 1630.2(m) ("Qualified individual with a disability means an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential

15

and, (3) that he was discriminated against because of his disability. *See* 42 U.S.C. § 12132; *Pritchard v. Southern Company Services*, 92 F.3d 1130, 1132 (11th Cir. 1996). In addition, a plaintiff must show that the employer had actual or constructive knowledge of his disability. *Gordon v. E.L. Hamm & Associates, Inc.*, 100 F.3d 907, 910 (11th Cir. 1996).

2. Disability

The first element James C. Gamble must establish as part of his *prima facie* case is that he has a "disability." The ADA defines the concept of "disability" in a manner that includes any individual:

(A)  who has a *physical or mental impairment* that *substantially limits* one or more of the *major life activities* of such individual, or

(B)  who has a *record of* such an impairment, or

(C)  who is *regarded as having* such an impairment.

*See* 42 U.S.C. § 12102(2).[1]  When applying that definition, three questions must be asked: (1) *is the condition an "impairment"?*; (2) *does the impairment "substantially limit" a major life activity?*; and (3) *what qualifies as a "major life activity"?*

3. Is plaintiff's condition an "impairment"?

The ADA does not define those conditions constituting a

functions of such position").

[1]Plaintiff does not allege, and there is no evidence in the record indicating, that he possessed a "record of" a disability, or that he was "regarded as" having a disability by P&M. Accordingly, this court will only determine whether he "has a physical or mental impairment that substantially limits one or more major life activities."

16

"physical or mental impairment."   Instead, that phrase, and many
other significant terms in the Act, are only defined in regulations
promulgated by the Equal Employment Opportunity Commission[5]
pursuant to authority delegated by Congress,[6] and, in the
"Interpretive Guidance on Title I of the Americans With
Disabilities Act" attached as an appendix to those regulations.
Those regulations are not binding on this court.   Nevertheless,
"courts may rely upon the regulations promulgated by the Equal
Employment Opportunity Commission ... for guidance" when
interpreting the ADA. *Gordon v. E.L. Hamm & Associates, Inc.,* 100
F.3d 907, 911 (11th Cir. 1996).   Moreover, the Supreme Court has
long recognized that an agency's interpretation of a statute it is
charged with enforcing should be given "considerable weight," and
should not be disturbed unless it appears from the statute or
legislative history that Congress intended a different
construction.

> [When] Congress has not directly addressed the precise
> question at issue, the court does not simply impose its
> own construction on the statute, as would be necessary in
> the absence of an administrative interpretation. Rather,
> if the statute is silent or ambiguous with respect to the
> specific issue, the question for the court is whether the
> agency's answer is based on a permissible construction of
> the statute.

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); *see
also Griggs v. Duke Power Co.,* 401 U.S. 424, 433, 434, 91 S.Ct.

---

[5]*See* 29 C.F.R. § 1630.

[6]*See* 42 U.S.C. § 12116 (requiring the EEOC to issue regulations to
implement Title I of the ADA).

17

849, 854-55, 28 L.Ed.2d 158 (1971) (administrative interpretations "entitled to great deference"). The *Chevron* standard is applied by the Eleventh Circuit in the context of ADA claims. *Harris v. H & W Contracting Co.*, 102 F.3d 516, 521 (11th Cir. 1996).

The EEOC's administrative interpretations of the ADA define a "physical impairment" as including:

> (1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or ....

29 C.F.R. § 1630.2(h)(1) (emphasis supplied). Applying that definition to the facts, this court is willing to find that plaintiff's "back strain" constitutes a "condition ... affecting ... the ... musculoskeletal" system and, therefore, a physical impairment. Indeed, defendant does not directly contest this issue.

**4. Does plaintiff's impairment "substantially limit" a "major life activity"?**

"A physical impairment, standing alone, however, is not necessarily a disability as contemplated by the ADA. ... The ADA requires that the impairment substantially limit one or more of the individual's major life activities." *Gordon*, 100 F.3d at 911 (citations omitted) (emphasis supplied).[7]

---

[7]*See also* I B. Lindemann & P. Grossman, *Employment Discrimination Law* 276 (3d ed. 1996):
> The definitions of "major life activity" and "substantial limitation" are closely allied. "Major life activities" are the basic activities that average persons can perform with little or no

18

P&M claims James Gamble was not "substantially limited" in any major life activity. Rather than eliminating specific major life activities, however, P&M argues that Gamble's condition was not substantially limiting in any fashion.

The phrase, "substantially limits," is not defined by the ADA, but implementing regulations instruct that it means the plaintiff either is:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or

> (ii) Significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).   The EEOC further instructs that the following factors should be considered in determining whether a particular individual is substantially limited in a major life activity:

> (i) The nature and severity of the impairment;

> (ii) The duration or expected duration of the impairment; and

> (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

---

difficulty, "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." "Substantially limits" means either the total inability or a severe restriction on the ability to perform a major life activity (in terms of condition, manner, or duration) as compared to the general population. The determination of whether an individual is "disabled" [therefore] depends on the effect the impairment has on the particular individual's life, and not simply on the name or diagnosis of the impairment. [Quoting 29 C.F.R. §§ 1630.2(i), 1630.2(j)(1).]

19

29 C.F.R. § 1630.2(j)(2).

Defendant argues that James Gamble's "injury was a temporary condition, which existed only for a short period of time, and, therefore, does not meet the definition of a disability under the ADA." (Defendant's brief at 8.) Gamble only claims that "THE EVIDENCE SHOWS [THAT] PLAINTIFFS [sic] CONDITION OF A BAD BACK INJURY IS ONE THAT FLAIRS [sic] UP CONSTANTLY DUE TO THIS INJURY." (Plaintiff's brief at 5.)

This court finds no evidence in the record sufficient to support James Gamble's ADA claim. The record reflects that Gamble returned to work by April of 1996, and the records from his treating physician demonstrate a pattern of improvement during treatment from February 8, 1996 through May 21, 1996. (Plaintiff's deposition exhibit 10.) Following his last treatment on May 21, 1996, Gamble's doctor recorded that his condition would "gradually improve," and authorized Gamble to "continue with his current work." (*Id.* at 2.) Indeed, Mr. Gamble testified that he considered himself "fully healed" by November of 1997. (Plaintiff's deposition at 119.)

Temporary back conditions, such as that suffered by James Gamble, do not constitute "substantially limiting" impairments as required by the ADA. *See Vulcu v. Trionix Research Laboratory, Inc.,* 993 F.Supp. 623 (N.D. Ohio 1998); *Rakestraw v. Carpenter Co.,* 898 F.Supp. 386 (N.D. Miss. 1995); *Presutti v. Felton Brush, Inc.,* 927 F.Supp. 545 (D.N.H. 1995); *Jones v. Alabama Power Co.,* No. 94-

20

PT-0094-S, 1995 WL 238338 (N.D. Ala. 1995)(Rehabilitation Act);
*Visarraga v. Garrett*, No. C-88-2828 FMS (CW), 1993 WL 209997 (N.D.
Cal. 1992)(Rehabilitation Act). James C. Gamble has not presented
evidence that he suffered from a "substantially limiting"
impairment sufficient to meet the ADA's definition of a "qualified
individual with a disability," and summary judgment is appropriate
on his ADA claim.

## V.   CONCLUSION

For the foregoing reasons this court concludes defendant's
motion for summary judgment is due to be granted, and its motion to
strike is moot. An order consistent with this memorandum opinion
will be entered contemporaneously herewith.

DONE this the _16th_ day of July, 1998.

_____
United States District Judge

21